Elite Wine & Spirit LLC v Michelangelo Preserv. LLC (2023 NY Slip Op 00631)

Elite Wine & Spirit LLC v Michelangelo Preserv. LLC

2023 NY Slip Op 00631

Decided on February 07, 2023

Appellate Division, First Department

GONZÁLEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 07, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Troy K. Webber Peter H. Moulton Lizbeth González Julio Rodriguez III

Index No. 29527/19E Appeal No. 17138 Case No. 2022-00579 

[*1]Elite Wine & Spirit LLC, Plaintiff-Respondent,
v
Michelangelo Preservation LLC, Defendant-Appellant.

Defendant appeals from an order of the Supreme Court, Bronx County (Julia I. Rodriguez, J.), entered October 6, 2021, which granted plaintiff's motion for a Yellowstone injunction, and related relief.

Cervini Swanson, LLP, New York (Joseph P. Cervini Jr. and Connor M. Peters of counsel), for appellant.
Doyle & Broumand, LLP, Bronx (Heidi P. Broumand of counsel), for respondent.

González, J. 

Plaintiff-tenant seeks Yellowstone relief. At issue is whether the record supports Supreme Court's finding that tenant engaged in good-faith efforts to remedy the defaults alleged by defendant-landlord, so as to support application of the extended cure period provided for in the subject lease. We hold that it does, and that Supreme Court providently exercised its discretion in granting tenant's Yellowstone application.
Pursuant to a lease between tenant and landlord's predecessor-in-interest, tenant operates a liquor store in the ground floor retail space of the building at 231A East 149th Street, in the Bronx.
Landlord issued tenant a 20-day notice of default, dated January 23, 2019 (the first notice), which alleged nine defaults by tenant under the lease: (1) trash collection, (2) permits and licenses (e.g., liquor license), (3) cleaning and maintenance of the premises, (4) maintaining and repairing the sidewalk, which was cracked and raised (the sidewalk issue), (5) extermination, (6) insurance coverage, (7) plans and approvals for work and alterations to the premises, (8) the existence of a step at the entrance to the store, in violation of the Americans with Disabilities Act (the ADA issue), and (9) proof as to the managing agents of tenant.
On about February 12, 2019, tenant provided satisfactory explanations and documentation regarding seven of the nine alleged defaults and made inquiry as to the remaining sidewalk and ADA allegations.
As to the sidewalk, tenant asked landlord to "advise as to the exact nature of the deficiency in question and your proposed requirements to remedy same."
As to the step, tenant disagreed that it was responsible under the lease to remedy potential ADA violations and denied that the leased premises were not in compliance with ADA requirements. Tenant noted that, when it took over the liquor store, the State Liquor Authority (SLA) inspected the premises, approved tenant's licenses, and, in the process, determined that the space "compl[ied] with all their regulations and for use by the public."
Landlord issued a second notice of default, dated March 18, 2019 (the second notice) which described the sidewalk and ADA issues, the two remaining alleged violations, in greater detail.
As to the sidewalk, the second notice stated that the portion closest to the curb was "cracked with a large hole and must be completely replaced." The notice specified that the sidewalk was "raised in a dangerous manner and the slab must be cut and repaired to make it even with the other sections of the sidewalk." Landlord demanded that [*2]such repairs "be immediately made."
As to the step, landlord rejected tenant's contention that the SLA inspection "absolved [tenant] of its obligation to comply with the ADA," because "the SLA has no authority or jurisdiction over ADA issues." Landlord demanded that tenant "immediately comply with the ADA" and "immediately remove all barriers to entry at the Premises in compliance with its obligations under the Lease."
On or about April 17, 2019, tenant responded to the second notice. As to the sidewalk issue, tenant asserted that it had repaired the crack in the sidewalk. Tenant asserted, however, that Con Edison had "caused and created" the raised sidewalk slab while working on an adjacent manhole, so that Con Edison was the "responsible party that should alleviate this condition."
As to the ADA issue, tenant stated that the step was "directly in front of [a] Con Edison Hatch," so that there was insufficient space to construct a permanent entry ramp. Tenant stated that it had instead acquired a custom-made "removable ADA ramp," and placed a "notice on the window advising patrons of the availability of" the ramp.
Landlord issued a final notice of default, dated May 21, 2019 (the final notice). As to the sidewalk, landlord stated that tenant had effected an "improper repair" by "merely filling the crack" with concrete "without providing proper permits from the Department of Buildings." As to the raised slab, landlord contended that, while tenant might have claims against a third party which caused the defect, the lease would still require tenant to repair the sidewalk. Landlord thus demanded that tenant immediately remedy the raised slab defect.
As to the step, landlord asserted that tenant's removable ramp was not in compliance with the ADA. Landlord demanded that tenant install an ADA-compliant permanent ramp or provide a report from an engineer substantiating that there is no possible manner in which an accessible ramp can be constructed at the premises.
The final notice further stated that tenant had previously received the "required" 20-day period to cure alleged defaults as provided under the lease. Landlord nonetheless expressly gave tenant an additional 10 days to cure the alleged defaults.
Meanwhile, landlord commenced a separate nonpayment proceeding against tenant in Civil Court, Bronx County. The parties settled the nonpayment proceeding by stipulation of settlement dated June 14, 2019, approximately 25 days subsequent to the final notice. Tenant consented to entry of a final judgment in an amount representing all rent and charges due through June 30, 2019, and thereafter remained current.
Despite the passage of the ostensible 10-day cure period set forth in the final notice dated May 21, 2019, landlord took no further action until August 5, 2019. On that date, landlord issued tenant a "Notice of Cancellation." The notice asserted that tenant had failed to cure the alleged defaults set forth in the default notices and stated that [*3]the lease would terminate in 10 days.
By email dated August 12, 2019, tenant implored landlord to give "one week extra" to "get a . . . permit and fix the sidewalk." Tenant noted that it had been "paying the rent on time and the back rent."
By summons and complaint verified August 15, 2019, tenant commenced this action in Supreme Court, Bronx County, seeking, inter alia, a declaration that it had not breached any of the lease provisions, so that the notices of default and cancellation were nullities. Tenant alternatively requested a declaration that, if there had been a breach, it be afforded a reasonable opportunity to cure. By order to show cause dated August 16, 2019, tenant moved for a preliminary stay of the notice of cancellation, as well as a Yellowstone injunction.
Supreme Court conducted a hearing on plaintiff's application over the course of three days between February 7, 2020, and May 11, 2021. Tenant's managing member, Roland Eshaghoff, testified that both sidewalk conditions had existed prior to tenant's taking possession of the premises. Eshaghoff asserted that he never received a copy of the May 2019 final notice. Eshaghoff testified that he understood tenant was required to maintain the sidewalk by removing trash and snow. He stated that it was "customary" for the owner to be "responsible for any work done outside the store," including sidewalk repair work.
For its part, landlord conceded that it was aware of no violations relating to the leased premises. Landlord's representative testified that it used a Google search to formulate its opinion that tenant's removable ramp was not in compliance with ADA requirements.
Supreme Court granted tenant's motion for a Yellowstone injunction and stayed the notice of cancellation pending determination of the declaratory judgment action. The court found that tenant timely addressed all nine defaults alleged in the first notice, immediately remedying seven. The court stated that, in the second notice, landlord clarified the nature of the alleged defaults on the remaining sidewalk and step issues. By April 17, 2019, tenant attempted to cure by constructing a removable ramp and filling in a sidewalk crack. The court credited tenant's explanation that it did not immediately repair the raised slab, believing that this was the responsibility of Con Edison.
The court also credited Eshaghoff's testimony that he did not receive the subsequent final notice. The court thus found "not incredible" tenant's belief that its sidewalk repair and fabrication of a removable ramp had resolved landlord's concerns. Tenant's belief was buttressed by the fact that landlord's counsel never raised the sidewalk and ADA issues in the nonpayment proceeding.
Supreme Court thus found that tenant "was consistently responsive to Landlord's requests and made good faith efforts to comply with same." Noting that the lease itself provides for an indefinite period to cure where tenant is making good faith efforts to remedy [*4]the default, the court held that tenant satisfied the requirements for a Yellowstone injunction.
In keeping with public policy against forfeiture, courts grant Yellowstone relief on "far less than the normal showing required for preliminary injunctive relief" (see Post v 120 E. End Ave. Corp., 62 NY2d 19, 25 [1984]). The tenant need only demonstrate that (1) it holds a lease; (2) it received a notice of default, notice to cure, or threat to terminate the lease; (3) it requested injunctive relief prior to the termination of the lease or expiration of the cure period; and (4) it is prepared to cure the alleged default by any means short of vacating the premises (see Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d 508, 514 [1999]; Three Amigos SJL Rest., Inc. v 250 W. 43 Owner LLC, 144 AD3d 490, 491 [1st Dept 2016], appeal dismissed 29 NY3d 1089 [2017]). Once the tenant establishes these elements, the motion court may exercise its discretion to issue a Yellowstone injunction tolling the tenant's time to cure (see Tag 380 v Sprint Spectrum, 290 AD2d 404, 404 [1st Dept 2002]).
Here, Supreme Court providently exercised its discretion in granting plaintiff a Yellowstone injunction (see JDM Wash. St. LLC v 90 Wash. St., LLC, 200 AD3d 612, 613 [1st Dept 2021]). The lease provides an indefinite cure period where the alleged default cannot reasonably be remedied within the base 20-day cure period and tenant has demonstrated a good faith effort to remedy the default (see Village Ctr. for Care v Sligo Realty & Serv. Corp., 95 AD3d 219, 222 [1st Dept 2012]). Supreme Court found, after holding a three-day hearing, that issues of fact exist as to the nature of the alleged defaults and the effectiveness of tenant's efforts to remedy them. These open questions include the repair of the raised slab and the feasibility of construction of a permanent ramp, as well as the suitability of the removable ramp to alternatively satisfy ADA requirements. While landlord disputes the effectiveness of tenant's efforts, this merely generates issues of fact that Supreme Court properly declined to resolve within the context of the Yellowstone application (see JDM Wash. St., 200 AD3d at 613; Boi to Go, Inc. v Second 800 No. 2 LLC, 58 AD3d 482, 482 [1st Dept 2009]).
Landlord argues that, because the original 20-day notice to cure was served on about January 23, 2019, tenant's request for an injunction was well outside the 20-day cure period (see Three Amigos, 144 AD3d at 491). This argument is unavailing. Landlord's argument ignores the lease's provision for an extended cure period, and landlord itself extended the cure periods in its successive and distinct default notices (see U.S. Bank N.A. v Sabloff, 192 AD3d 724, 726-727 [2d Dept 2021]; see also Tzifil Realty Corp. v Samuels, 43 Misc 3d 144[A], 2014 NY Slip Op 50886[U], *1 [App Term, 2d Dept 2014] [latest in series of four cure notices held to be effective date]).
The record supports Supreme Court's [*5]finding that tenant engaged in good faith efforts to remedy the alleged defaults, as set forth in its April 17, 2019, c0mmunication to the landlord. Significantly, the final notice by its terms expressly gave tenant another 10 days to cure. Supreme Court credited tenant's assertion that it did not receive the May 21 final notice and was thus unaware of landlord's contention that its efforts were inadequate. Additionally, during the contemporaneous lease-related litigation between the parties — the nonpayment proceeding — no mention was made by landlord of the alleged defaults.
Landlord counters that the resolution of the nonpayment proceeding had no effect beyond disposition of the nonpayment claims at issue there. At this juncture, however, it is not necessary to make any definitive determination of the effect, if any, of the parties' settlement of the nonpayment proceeding. For purposes of plaintiff's Yellowstone application, tenant has sufficiently explained its good faith and pause in remedying the alleged defaults.
We thus affirm Supreme Court's exercise of discretion in granting plaintiff a Yellowstone injunction, as well as the related preliminary stay of the notice of cancellation.
Accordingly, the order of the Supreme Court, Bronx County (Julia I. Rodriguez, J.), entered October 6, 2021, which granted plaintiff's motion for a Yellowstone injunction, and related relief, should be affirmed, without costs.
Order, Supreme Court, Bronx County (Julia I. Rodriguez, J.), entered October 6, 2021, affirmed, without costs.
Opinion by González, J. All concur.
Renwick, J.P., Webber, Moulton, González, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 7, 2023